**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ROBERT E. MOECKEL, individually** | ) | |
| **and on behalf of the John Morell** | ) | |
| **Employee Benefits Plan, similarly** | ) | |
| **situated Plans, and other participants** | ) | |
| **and beneficiaries similarly situated,** | ) | |
| | ) | **Case No. 3:04-0633** |
| **Plaintiff,** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Knowles** |
| **v.** | ) | |
| | ) | |
| **CAREMARK RX INC., and** | ) | |
| **CAREMARK INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Pending before the court is Defendants' Amended and Restated Motion to Dismiss or

Transfer Plaintiff's Complaint (Docket No. 45) filed by defendants Caremark Rx Inc. and

Caremark Inc., to which the plaintiff Robert E. Moeckel has responded (Docket No. 40), and

defendants have replied (Docket No. 41).


**Factual Background and Procedural History**[1]

The plaintiff is a participant in and beneficiary of the John Morrell Employee Benefits

Plan ("the John Morrell Plan"), a plan that is alleged to be an "employee benefit plan" within the

meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*.

---

[1]Except as otherwise noted, all facts are drawn from plaintiff's Amended Complaint.
(Docket No. 44).

1

The John Morrell Plan is a prescription drug plan, funded by contributions by the plan sponsors as well as co-insurance, deductibles, co-payments, and other contributions made by the plaintiff and other plan participants and beneficiaries. The plaintiff alleges that the John Morrell Plan is self-funded by the participants' direct, bi-monthly payroll contributions and by participants' co-payments calculated on a percentage basis relative to the cost of the prescription drugs.

According to the plaintiff's complaint, an employer who adopts a self-funded plan typically hires a third-party administrator to administer the plan and pay prescription drug claims for the employer using the Plan's money. In this case, the plaintiff alleges that the John Morrell Plan's prescription drug benefits are administered by defendant Caremark,[2] a pharmacy benefits manager ("PBM"). Caremark's relationship with the John Morrell Plan is governed by the Prescription Benefit Management Agreement ("Service Contract") between John Morrell & Company and Caremark Inc., first entered into on January 1, 1997. (Docket No. 31, Declaration of James F. Hogan, Exhibit A, Service Contract.)[3] The plaintiff alleges that, in return for comprehensive drug processing services, Caremark receives dispensing and administrative fees, which are disclosed and negotiated with its plan clients. The activity central to this case is the additional compensation that the plaintiff claims Caremark receives in excess of the administrative fees negotiated with its plan clients, by virtue of Caremark's secret self-dealing with pharmacies, drug manufacturers, and other entities. Plaintiff asserts that Caremark fails to

[2]The plaintiff refers to defendants "Caremark Rx, Inc. and/or Caremark, Inc." collectively as "Caremark" throughout his Amended Complaint. (Docket No. 44 at 1.)

[3]The court recognizes that this document was filed under seal and has only referenced or excerpted the Service Contract to the extent that the defendants have also done so in their brief, which was not filed under seal.

2

disclose this compensation to the plans and fails to pay it to the plans as plan assets.

In sum, Moeckel claims that Caremark exercises discretion or control over the pricing of prescription drugs through its control over the terms of its contracts with its network of retail pharmacies (which control the reimbursement rates for retail drugs) and with drug manufacturers (which control the actual cost of drugs dispensed through Caremark's mail order pharmacies). Plaintiff alleges that Caremark manipulates the terms of its undisclosed contracts by creating hidden "pricing spreads" that yield significant revenue to Caremark that it fails to pass through to the plans. By failing to disclose to the plans the discounted price it pays for drugs purchased by the plans' participants and beneficiaries at retail pharmacies, Caremark is allegedly able to conceal from the Plans the fact that Caremark secretly exercises its discretion to create a "spread" between the discounted price that Caremark pays retail pharmacies and the discounted price that Caremark contracts to be reimbursed by the plans, a "spread" it retains. Similarly, by buying drugs from drug manufacturers to stock mail-order pharmacies, through which Caremark sells prescriptions to participants and beneficiaries, Caremark arranges significant discounts on those drugs but creates a "spread" (which it retains) between the price that Caremark agrees to pay the manufacturers and the prices that Caremark contracts to be reimbursed by the plans.

Moeckel also alleges that Caremark contracts with drug manufacturers in ways that enrich Caremark to the detriment of the plans. Plaintiff alleges that Caremark is delegated discretionary control and authority to decide which manufacturers' drugs should be included in its formularies, including which will be included in its standardized formulary, which drugs on the formularies will be "preferred," and which relative cost indicators will be placed next to each included drug. Plaintiff also alleges that Caremark is delegated discretionary authority and

control to create "formulary compliance programs," or drug-switching programs, which enable Caremark to switch plan participants and beneficiaries from higher-cost therapeutically equivalent drugs to lower-cost therapeutically equivalent drugs. The plaintiff alleges that Caremark uses the market power it gains from this level of control to enrich itself at the expense of the plans, by negotiating with manufacturers to favor more expensive therapeutically equivalent drugs, which increase the plans' costs, in exchange for monies which it retains and does not pass on to the plans. Having negotiated with a plan or a plan's sponsor to share some of the rebates or other compensation, the plaintiff alleges that Caremark also engages in self-dealing by characterizing (and sometimes intentionally mischaracterizing) payments, credits, or other compensation in ways to maximize its own profit at the expense of the plans. Moeckel also alleges that Caremark generates and retains interest on the "float" prior to disbursement of any rebates to the plans.[4]

Plaintiff filed this case on July 19, 2004 as a putative class action on behalf of the John Morrell Plan and all other similarly situated self-funded prescription drug plans utilizing the services of defendants Caremark Rx Inc. and Caremark Inc.[5] Plaintiff's original Complaint was superseded by the Amended Complaint, filed November 9, 2004. (Docket No. 44.) In it,

---

[4]In the Amended Complaint, the plaintiff alleges a third way in which Caremark violates its fiduciary duties—by secretly and subversively conspiring with drug manufacturers to inflate the average wholesale price of prescription drugs, thereby evading the "best pricing" statute, the Omnibus Budge and Reconciliation Act, 42 U.S.C. § 1396r-8. Plaintiff does not mention this allegation in his brief.

[5]The plaintiff alleges that, prior to filing suit, he contacted the Human Resources Department of his employer, and the company, to his knowledge, did not object to, seek to intervene in, nor commence its own litigation, nor did the Plan Sponsor or any other Plan Administrator initiate any type of administrative process or review.

4

plaintiff asserts multiple counts against Caremark Rx Inc. and/or Caremark Inc. under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, bringing claims in his capacity as a participant in the John Morrell Plan, on behalf of the John Morrell Plan under Section 502(a)(2) and/or 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(2) and (a)(3), and on his own behalf and on behalf of other participants in, and/or beneficiaries of, the John Morrell Plan and other prescription drug Plans administered by Caremark who have made percentage co-payments when purchasing prescription drugs, under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Plaintiff alleges that the defendants, whom plaintiff asserts are fiduciaries within the meaning of ERISA, violated ERISA in the following ways: (1) Count I - breach of fiduciary duty under 29 U.S.C. § 1104; (2) Count II - breach of fiduciary duty under 29 U.S.C. § 1106(b)(1); (3) Count III - breach of fiduciary duty under 29 U.S.C. § 1106(b)(2); (4) Count IV - breach of fiduciary duty under 29 U.S.C. § 1106(b)(3); (5) Count V - breach of the duty of care under 29 U.S.C. § 1104(a)(1)(B); (6) Count VI - a cause of action for appropriate equitable relief from Caremark as a "party-in-interest" pursuant to 29 U.S.C. § 1106(A)(1)(D) and § 1132(a)(3); and (7) Count VII - an accounting of the amount of plan assets Caremark retained for its own benefit (and to the detriment of the plans) and of the profits earned by Caremark through its unlawful activities. Oral argument was heard on January 20, 2005 regarding Defendants' Amended and Restated Motion to Dismiss or Transfer Plaintiff's Complaint (Docket No. 45), which is currently before the court. The parties have filed supplemental authority that they assert is relevant.

## Discussion

5

I.      **Standard of Review**

The defendants move to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to lack of standing or pursuant to Rule 12(b)(6) for failure to state a claim, on various grounds. A motion to dismiss for lack of standing is properly analyzed under Rule 12(b)(1), since "[s]tanding is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction." *Ward v. Alternative Health Delivery Sys.*, 261 F.3d 624, 626 (6th Cir. 2001).

The defendants contend that, in addressing their motion to dismiss pursuant to Rule 12(b)(1), the court is not required to accept all of the plaintiff's factual allegations as true, the moving party may submit evidence indicating that the court lacks subject matter jurisdiction, and the plaintiff bears the burden of proving that jurisdiction exists, under the authority of *RMI Titanium Company v. Westinghouse Electric Corporation*, 78 F.3d 1125, 1133–35 (6th Cir. 1996). This is partially correct. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citing *RMI Titanium,* 78 F.3d at 1133–35); *see also Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004).

In this case, the defendants have submitted no evidence in support of their argument that the plaintiff lacks standing, nor have they pointed to any disputed facts that they have called upon the court to resolve. The only evidence that the defendants submit is the Service Contract

6

between John Morrell and Company and Caremark Inc., which the defendants cite in support of their argument that they are not fiduciaries under ERISA (as is proper in some cases on a Rule 12(b)(6) motion), and not in support of their standing argument. For this reason, the court concludes that the defendants have actually mounted a "facial challenge" not a "factual challenge" to subject matter jurisdiction in this case; accordingly, the court views all of the allegations of plaintiff's complaint as if they are true.

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court also construes the complaint in the light most favorable to the plaintiff and accepts as true the facts as the plaintiff has pleaded them. *See Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003); *Performance Contracting, Inc. v. Seaboard Surety Co.*, 163 F.3d 366, 369 (6th Cir. 1998). The court will not dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (1957). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Performance Contracting, Inc.,* 163 F.3d at 369. The narrow inquiry is based on whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Id.* Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002).

As stated above, the defendants submitted the Service Contract along with their motion to

7

dismiss. Generally, matters outside of the pleadings are not to be considered by a court ruling on a Rule 12(b)(6) motion to dismiss; however, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *Weiner v. Klais*, 108 F.3d 86, 88–89 (6th Cir. 1997). In this case, central to the plaintiff's claim is the allegation that plaintiff's employer and Caremark have entered into a contract under which Caremark manages and administers the delivery of prescription drug benefits to the John Morrell Plan's participants and beneficiaries. Accordingly, the Service Contract is properly considered as part of defendants Rule 12(b)(6) motion to dismiss.

II.     **Analysis**

    A.     Caremark Rx Inc.

As an initial matter, the defendants assert that Caremark Rx Inc. should be dismissed from this case. Defendants observe that Moeckel seeks to hold Caremark Rx Inc. liable for various breaches of ERISA-based fiduciary duties arising out of Caremark Rx Inc.'s supposed contract with the John Morrell Plan to provide services as a prescription benefits manager (Docket No. 44 ¶ 18), but, in fact, Caremark Rx Inc's wholly-owned subsidiary, Caremark Inc., is the only party to the Service Contract with John Morrell & Company. (Docket No. 31, Ex. A, Service Contract at 1.) Because "a parent corporation . . . is not liable for the acts of its subsidiaries," *United States v. Bestfoods*, 524 U.S. 51, 61 (1998), the defendants argue that Caremark Rx Inc. cannot be held liable for actions by Caremark Inc. arising out of its contract to serve as pharmacy benefits manager for the John Morrell Plan. The plaintiff argues that, even in

8

the absence of a direct contractual relationship between Caremark Rx Inc. and the John Morrell Plan, Caremark Rx Inc. may be a fiduciary, to the extent that it authorizes authority or control over the assets of the Plan. The court is not persuaded. Because the Service Contract sets forth the terms of John Morrell & Company's relationship with its pharmacy benefits manager to service the John Morrell Plan (upon which plaintiff's claims are based), and because Caremark Inc. is the only other party to that contract, the court concludes that dismissal of Caremark Rx Inc. is warranted.

      B.    <u>Standing</u>

The defendants assert that plaintiff's complaint must be dismissed because he lacks standing, both individually and as a representative on behalf of the Plan. With respect to his individual standing, the defendants assert that there are fatal deficiencies in plaintiff's ability to make out both Article III and statutory standing.

As the Supreme Court has observed, "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth*, 422 U.S. at 498.

The Supreme Court has defined the "irreducible constitutional minimum" of standing to contain three elements: (1) that the plaintiff has suffered an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent,

9

not conjectural or hypothetical;" (2) that there is a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) that it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations, quotation marks, and alterations omitted); *see also Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Fallick*, 162 F.3d at 421 n.8. The Supreme Court has noted that the party invoking federal jurisdiction bears the burden of establishing these elements and that each element must be supported with the manner and degree of evidence required for that party to carry the burden of proof at the particular stage of litigation. *Lujan*, 504 U.S. at 561.

The defendants assert that Moeckel is unable to establish the three required elements of Article III standing for a number of reasons. First, the defendants contend that Moeckel alleges only an indirect financial injury from decisions that have been or may be made by the Plan sponsor, who is not a party to this lawsuit, in response to the alleged actions of Caremark, Inc. Defendants challenge plaintiff's alleged injuries as entirely speculative. In addition, where, as here, a third party is the object of the challenged action, the defendants contend that the plaintiff must adduce facts to show that the third party will behave in such a manner as to produce causation and permit redressability, and further argue that no standing exists when an independent actor retains broad discretion that the courts cannot control or predict. Here, the defendants argue, Moeckel cannot demonstrate causation or redressability because he cannot prove how the Plan sponsor would act with regard to contributions, copayments, or

10

compensation.

The court finds that the plaintiff is able to meet his burden to establish the constitutional elements of standing at this stage in the litigation. The court does not view plaintiff's alleged individual injuries as speculative. He alleges that he has purchased prescription drugs as a participant in the Plan through Caremark. (Docket No. 44, Amended Complaint ¶ 13(a).) He alleges that he has contributed and continues to contribute to the assets of the Plan through payroll contributions. He alleges that he has been injured by paying co-payments on a percentage basis[6] and that he has been "switched" (or faces the actual and imminent threat of being "switched") from one drug to another, resulting in unjust enrichment to Caremark Inc., increased expense to the plaintiff, and/or less effective pharmaceuticals. He alleges that he has paid a higher level of monthly contributions, co-payments, and other payments as a result of Caremark's conduct to offset additional costs and that he has received a reduction in employment benefits or other compensation from John Morrell to offset the additional costs to the Plan posed by Caremark's conduct. He alleges that he faces the actual or imminent threat that there will be inadequate funds in the Plan to cover the premiums of his prescription medication, that the Plan will be discontinued, that he will be required to make higher co-payments or contributions to the Plan, or that other employment benefits will be reduced to offset additional expenses to the Prescription Drug Plan, as a direct and proximate result of Caremark's conduct. He alleges that Caremark has sold his personal information to various

---

[6]Because, under a percentage co-payment scheme, the participant pays a percentage of the cost of the drug and the plan pays the rest, if the cost of the prescription drug is inflated due to self-dealing by a defendant, the plaintiff asserts that the additional cost is shared by the participant and the plan.

parties. Finally, he alleges that he has a legally protected interest in having his employee benefit plan administered by fiduciaries who are loyal and do not engage in self-dealing or prohibited transactions and that such conduct itself constitutes actual or imminent injury in fact. Having alleged that he contributes to the Plan's assets, that he has purchased prescriptions through the Plan, and that he has suffered the effects of Caremark's self-dealing in the form of higher co-payments and contributions, drug switching, and threats of Plan insolvency, the plaintiff has sufficiently alleged a concrete, particularized injury to himself that is actual or imminent and not speculative.

Similarly, the court finds that the plaintiff has sufficiently alleged causation. If, for instance, the defendants have artificially inflated the cost of the prescriptions, a percentage of this inflated cost is directly passed on to the plaintiff in the form of a higher percentage co-payment. If the defendants have improperly "switched" covered prescriptions, not for therapeutic reasons but based on profit-maximizing motives, the plaintiff has been directly affected by not having a preferred drug covered. Plaintiff has adequately established how his alleged injuries may be fairly traced to the challenged actions of the defendants, as they deliver prescription drug benefits on behalf of the Plan.

Finally, the court finds no merit in the defendants' argument that the court's ability to redress the harm to the plaintiffs depends on unfettered choices made by the Plan sponsor which the court cannot control or predict. As the plaintiff asserts, the anti-inurement provisions of ERISA require that the Plan's assets be held in trust and not inure to the benefit of any employer but that they "be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries." 29 U.S.C. §§ 1103(a) and 1103(c)(1). Any restitution in the form of

disgorgement of ill-gotten profits would be paid back to the Plan. Any equitable relief would flow to the plaintiff's benefit.[7]

In concluding that the plaintiff has established Article III standing, the court's decision is in line with other decisions that have considered the question in a similar factual circumstance, i.e., breach of fiduciary duty claims by a participant and beneficiary in an ERISA action against a PBM. *See Marantz v. Advance PCS, Inc.*, No. CIV 01-2413-PHX-EHC, at 3–5 (D. Az. Aug. 7, 2003) (finding that plaintiff had established Article III standing sufficient to satisfy motion to dismiss); *Minshew v. Express Scripts, Inc.*, Case No. 4:02cv1503SNL, at 3–4 (E.D. Mo. Oct. 8, 2004) (same); *see also Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1329 (N.D. Ala. 2004) (observing summarily that Plan participants have Article III standing, but granting motion to dismiss on alternate grounds).

The standing doctrine also includes prudential rules, to which the federal judiciary has adhered to respect the properly limited roles of the courts in a democratic society; however, these rules may be modified or abrogated by Congress. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). Although Article III standing requirements remain, "Congress may grant an express right of action to persons who would be barred by prudential standing rules . . . ." *Warth*, 422 U.S. at 501.

---

[7]Defendants' reliance on *Warth v. Seldin* in support of this argument is inapposite. In that case, taxpayers in Rochester, New York (among other groups of plaintiffs) challenged a zoning ordinance of an adjacent town. The Court found that these taxpayer-petitioners complained of a completely conjectural injury—i.e., increased taxation—and that this injury resulted only from "decisions made by the appropriate Rochester authorities, which are not parties to this case." *Warth*, 422 U.S. at 509. In this case, the Plan Sponsor is limited in its actions by ERISA's anti-inurement provisions, while the Rochester authorities in *Warth* likely had nearly unfettered discretion, and multiple variables to consider, in assessing taxes.

Plaintiff brings this action in two guises: (1) as a participant in the John Morrell Plan, on behalf of the John Morrell Plan under Section 502(a)(2) and/or 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(2) and (a)(3); and (2) on his own behalf and on behalf of other participants in and/or beneficiaries of the John Morrell Plan and other prescription drug plans administered by Caremark who have made percentage co-payments when purchasing prescription drugs, under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  Thus, plaintiff's claims implicate two of ERISA's civil enforcement provisions, as follows:

> (a) Persons empowered to bring a civil action.  A civil action may be brought–. . .
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under Section 409 [29 U.S.C. § 1109];
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;

29 U.S.C. §§ 1132(a)(2)–(3).  Section 409, which is referenced in Section 502(a)(2) of ERISA above, is captioned "Liability for breach of fiduciary duty" and provides, in relevant part:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 411 of this Act [29 USCS § 1111].

29 U.S.C. § 1109(a).

The Supreme Court has set forth some of the boundaries of actions under Sections 502(a)(2) and (3).  In *Massachusetts Mutual Life Insurance Company v. Russell*, the Court held that, although Section 502(a)(2) explicitly authorizes a participant or beneficiary of a Plan to

14

bring an action against a fiduciary who has violated Section 409, Section 409 authorizes relief only to the plan as a whole; thus, an award of extracontractual damages to a beneficiary would have been improper under Section 502(a)(2). *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134, 140, 144 (1985). The Court has interpreted Section 502(a)(3) as a "catch-all" provision, which would allow a participant or beneficiary to bring an action for individual relief for a fiduciary's breach of a fiduciary obligation.[8] *Varity v. Howe*, 516 U.S. 489, 510–11 (1996). Thus, although Section 502(a)(2) specifically concerns actions for breach of fiduciary duty, it is not the exclusive source of relief for such a breach and, in fact, focuses specifically on obligations related to a plan's financial integrity, given Section 409's focus on plan assets. *Id.* at 1077–78.

Having alleged that he is a participant and beneficiary of the John Morrell Employee Benefits Plan (Docket No. 44 ¶ 13), Moeckel explicitly comes within the class of persons that ERISA contemplates as bringing breach of fiduciary duty claims under both provisions. "ERISA authorizes participants to sue on behalf of a plan for breach of fiduciary duty . . . . Permitting such suits by participants is the mechanism which Congress established to enforce the plan's right to recover for a breach of fiduciary duty." *Smith v. Provident Bank*, 170 F.3d 609, 616 (6th Cir. 1999) (citing 29 U.S.C. § 1132(a)(2)). "Participants can also sue for breaches of fiduciary duty that harm them as individuals." *Smith*, 170 F.3d at 616 n.3 (citing *Allinder v. Inter-City Prods. Corp.*, 152 F.3d 544, 551 (6th Cir. 1998)).

The defendants contend that the plaintiff lacks statutory authority to pursue this action

---

[8]As suggested by the provision's text, and as discussed *infra*, Section 502(a)(3) limits the types of relief available to plaintiffs bringing suit under it to injunctive or "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3).

15

under ERISA, in part because Moeckel seeks to have the court impose a constructive trust for the Plan and/or its participants and beneficiaries. (Docket No. 35 at 14; Docket No. 44 at 30 ¶ e.) The defendants contend that this remedy is inapposite, because the Supreme Court and the Sixth Circuit have held that ERISA Sections 409 and 502(a)(2) only provide relief for the Plan, not participants. It is correct that Sections 409 and 502(a)(2) only authorize relief for the Plan and not individual participants or beneficiaries, even though such individuals may bring an action for relief on behalf of the Plan. *See Russell*, 473 U.S. at 140, 144; *Weiner*, 108 F.3d at 92. However, participants and beneficiaries may bring a claim for breach of fiduciary duty in their individual capacity under Section 502(a)(3), which authorizes injunctive or "appropriate equitable relief" for the plaintiffs' individual benefit. *See Varity*, 516 U.S. at 510–11; *Smith*, 170 F.3d at 616 n.3; *Allinder*, 152 F.3d at 551–52. Imposition of a constructive trust is one of the types of equitable relief specifically contemplated by the Sixth Circuit as being available to individual participants or beneficiaries under Section 502(a)(3). *See Allinder*, 152 F.3d at 553 (expressing the limited nature of the relief available to individuals under Section 502(a)(3) when it observed, "employees are left with the often-inadequate remedy of an injunction, imposition of a constructive trust, or the removal of the fiduciary.")

The defendants further assert that plaintiff lacks statutory authority to pursue this action because the relief available under Section 502(a)(3) "does not include money damages however named or artfully pled." (Docket No. 35 at 14.) The Supreme Court, in *Great-West Life & Annuity Insurance Co. v. Knudson*, held that petitioners who sought the imposition of personal liability on respondents for a contractual obligation to pay money sought only legal, not equitable, relief and thus Section 502(a)(3) did not authorize their action. *Great-West Life &*

*Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 (2002); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (observing that money damages, as traditionally understood, are not encompassed within "appropriate equitable relief"). However, the Court also observed that, where a plaintiff sought not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession by seeking a constructive trust or an equitable lien, such restitution would have been available in equity and was, therefore, permissible under Section 502(a)(3). *Id.* at 213–15, 218; *see also Helfrich v. PNC Bank, Ky. Inc.*, 267 F.3d 477, 481, 482–83 (6th Cir. 2001) (distinguishing the case at bar, where the plaintiff sought monetary compensation for a fiduciary's failure to transfer funds and thus sought compensatory relief inappropriate under Section 502(a)(3), from a case where a plaintiff sought to have ill-gotten gains restored—appropriate restitutionary relief under Section 502(a)(3)). In this case, because the plaintiff seeks restitution and disgorgement of allegedly ill-gotten profits and other monies that should have flowed to the Plan, this line of authority is no bar to plaintiff's claim.

The defendants also assert that Moeckel lacks standing to sue in his representative capacity on behalf of the Plan. They argue that Moeckel lacks standing to bring claims of breach of fiduciary duty on behalf of the Plan because of his "utter lack of injury in fact." (Docket No. 35 at 15.) The defendants contend that courts have ruled that Section 502(a) does not permit plan participants to seek relief on behalf of others, or based on the injuries of others, when they themselves have not suffered a concrete injury that is capable of redress. Because, as discussed above, the court finds that the plaintiff has adequately pled an injury to establish individual,

17

Article III standing, this argument is inapposite.[9]

As discussed above, Section 502(a)(2) explicitly contemplates that participants and beneficiaries, in addition to fiduciaries and the Secretary of Labor, would bring "actions for breach of fiduciary duty . . . in a representative capacity on behalf of the plan as a whole." *Russell*, 47 U.S. at 141 n.9. No argument or authority adduced by the defendants convinces the court that there is any infirmity in plaintiff's attempt to do so in the present case.


C.      Exhaustion of Administrative Remedies

As an additional basis for dismissal, the defendants assert that plaintiff's complaint should be dismissed because he has failed to exhaust his administrative remedies. Because, the defendants contend, Moeckel has admitted that he made no attempt to seek a remedy through the administrative process, his claims should be dismissed. The plaintiff responds that defendants have not identified any available administrative remedy that the plaintiff has failed to pursue. The plaintiff also asserts that his breach of fiduciary duty claims involve a matter of law under statute, which a court is uniquely qualified (and a plan administrator unqualified) to decide.

The Sixth Circuit has observed that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991); *see also Weiner*, 108

_____

[9]The present case is distinguishable from *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 452, 456 (3d Cir. 2003), cited by the defendants, where the plaintiff, who challenged the disclosure policies of the health maintenance organization of which she was a member, was found not to have an injury when she did not have healthcare deductions taken from her paycheck and conceded that the care and coverage she received was never affected by the existence of any undisclosed physician incentives. In the case at bar, Moeckel has sufficiently alleged injury in fact.

18

F.3d at 90. This administrative exhaustion requirement is not part of the explicit statutory text—ERISA, by its terms, only requires that a claims procedure be established and sets forth minimum requirements for such procedures. *Fallick*, 162 F.3d at 418 (citing ERISA § 503, 29 U.S.C. § 1133); *Constantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994). The text provides as follows, in relevant part: "[E]very employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2), *quoted in Miller*, 925 F.2d at 986. The Sixth Circuit has described it as "well settled" that "ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005). Nevertheless, failure to exhaust may be excused in circumstances where "resort to the administrative route is futile or the remedy inadequate." *Constantino*, 13 F.3d at 974; *see also Ravencraft v. UNUM Life Ins. Co. of Amer.*, 212 F.3d 341, 343–44 (6th Cir. 2000); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991).

When faced with unexhausted claims for breach of fiduciary duty under ERISA, the Sixth Circuit has steadfastly declined to state a position as to whether exhaustion is required and has, instead, resolved the question on futility grounds or by interpreting plaintiffs' "breach of fiduciary duty claims" as denial of benefits claims repackaged to avoid the exhaustion requirement. *See Hill*, 409 F.3d at 717 ("Because requiring the Plaintiffs to exhaust administrative remedies would be futile in this case, we again find it unnecessary to decide the more difficult issue of whether exhaustion of administrative remedies should be required for statutorily created rights."); *Fallick*, 162 F.3d at 418–19 ("The question of whether one must

19

exhaust administrative remedies when bringing an action to assert rights granted by ERISA itself is generally unsettled.  In the instant matter, because we find that exhaustion of administrative remedies would be futile, we need not reach this issue." (footnote omitted)); *Weiner*, 108 F.3d at 91 ("[T]he basis of this claim is the denial of benefits, which plaintiff had an obligation to appeal before he sued in federal court.  Plaintiff cannot get around the exhaustion requirement by simply disguising his claim as a breach of fiduciary duty.")  In doing so, the Court has declined to take a position on an issue that has split the Circuit Courts of Appeals—whether ERISA requires administrative exhaustion for actions based on violations of ERISA's statutorily-created rights as it does for actions based on individual claims for benefits.  At the same time, the Court has observed the circuit split on the issue.  *See Fallick*, 162 F.3d at 418 n.6 (noting that five circuits have held that exhaustion is required in such circumstances while six circuits do not require exhaustion, "on the ground that there is no need for deference to plan fiduciaries who have no experience in interpreting statutory rights.")

In this case, the plaintiff has pled, but not argued, futility or that the administrative scheme provides an inadequate remedy, nor can a creditable case be made that the plaintiff is actually posing denial of benefits claims masquerading as breach of fiduciary duty claims.  Thus, none of the routes that courts in the Sixth Circuit have used to avoid the question of whether ERISA requires  administrative exhaustion with respect to claims to enforce statutory rights is available to this court.  The defendant urges the court to adopt the position of the Eleventh Circuit Court of Appeals, which requires administrative exhaustion with respect to both actions to enforce statutory rights and actions to recover benefits.  *See, e.g., J.W. Counts v. American Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 109 (11th Cir. 1997).  By contrast, the plaintiff

points to Sixth Circuit authority in which the Court ruled that, because the plaintiff's claim arose

from an ERISA statutory right, the administrative exhaustion doctrine did not bar his claim.

In *Richards v. General Motors Corporation*, the plaintiff asserted claims under ERISA,

including one alleging that he had been discharged for exercising, or to prevent exercise of, his

ERISA rights in violation of 29 U.S.C. § 1140.  *Richards v. Gen. Motors Corp.*, 991 F.2d 1227,

1229 (6th Cir. 1993).  The district court had based its dismissal of plaintiff's ERISA claims on

his failure to exhaust administrative remedies, but the Sixth Circuit reversed on this point,

concluding that plaintiff's retaliatory discharge claim was not precluded for failure to exhaust for

two reasons.  First, the Court observed that plaintiff's retaliatory discharge claim was based

directly on a statutory provision of ERISA, 29 U.S.C. § 1140, "as an interference with a right

properly his under the savings plan."  *Richards*, 991 F.2d 1227, 1235 (6th Cir. 1993).  Thus,

"[t]he 'denial of claim' provisions from the savings plan are therefore not necessarily

applicable."  *Id.*  The Court also concluded that, viewing the evidence in the light most favorable

to the plaintiff, the responses that the plaintiff had received from the company in reply to his

written protestations of his discharge suggested that further efforts to seek reinstatement would

have been futile.

By ruling that the company's savings plan's "denial of claim" administrative procedures

were not necessarily applicable to plaintiff's retaliatory discharge claim, which arose under

statute, the Court allowed that failure to exhaust administrative remedies would not bar a

statutory claim.  Indeed, although the Sixth Circuit has repeatedly portrayed itself as not having

decided the issue of whether exhaustion of administrative remedies is required with regard to

ERISA statutorily-created rights such as breach of fiduciary duty, the *Fallick* court actually cites

21

the *Richards* decision in its list of the six circuits that have held that no exhaustion is required

with respect to statutory rights. *See Fallick*, 162 F.3d at 418 n.6 (citing *Richards* along with five

decisions of other circuit courts). Thus, there is authority in this Circuit for ruling that the

administrative exhaustion doctrine will not bar claims to enforce ERISA statutory rights, such as

breach of fiduciary duty claims.

In addition, this court finds other compelling reasons that the plaintiff's failure to exhaust

should be no bar to his claims. At this stage, Plan documents are not before the court, so the

scope of the administrative review procedures is unknown. In another case in which the court

found exhaustion not required, the Fifth Circuit came to this conclusion, in part, after looking at

the plan and observing that "the grievance is completely foreign to the plan and the plan is

incapable of providing a remedy." *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 n.7 (5th

Cir. 1995). As the Ninth Circuit reasoned in *Amaro v. Continental Can Company,* the plaintiff

alleges only violations of protections afforded by statute, for which ERISA does not mandate or

recommend any internal appeal procedure.[10] *Amaro v. Continental Can Co.*, 724 F.2d 747, 751

(9th Cir. 1984). As stated in *Amaro*, with respect to these statutory protections, "there is only a

statute to interpret," a task properly reserved to the judiciary for which plan administrators would

have no special expertise. *Amaro*, 724 F.2d at 751–52. The Sixth Circuit has noted that review

or exhaustion is useful because it "enables plan fiduciaries to 'efficiently manage their funds;

correct their errors; interpret plan provisions; and assemble a factual record which will assist a

court in reviewing the fiduciaries' actions.'" *Baxter*, 941 F.2d at 453 (quoting *Makar v. Health*

---

[10] As stated above, it is ERISA's requirement that a claims procedure be established that
led the courts to read an administrative exhaustion requirement into the text of the statute.
*Fallick*, 162 F.3d at 418; *Constantino*, 13 F.3d at 974.

*Care Corp. of Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir. 1989)); *see also Ravencraft*, 212 F.3d at 343 (same). With the possible exception of the final factor, the court finds that none of these policies is advanced by exhaustion with regard to ERISA claims of breach of fiduciary duty.

For these reasons, dismissal on grounds of failure to exhaust is improper.

C.     The Question of Caremark Inc.'s Fiduciary Status

Perhaps the most central question in this case is whether or not Caremark Inc. can be considered a fiduciary within the meaning of ERISA, a point hotly disputed by the parties. The defendants assert that Caremark Inc. cannot be considered a fiduciary and that Moeckel's breach of fiduciary duty claims must fail, because Caremark Inc. has no ability under the controlling Service Contract to exercise discretionary authority over the Plan. They contend that, as a matter of law, Caremark Inc. could not have been exercising discretionary authority over the Plan when allegedly taking the actions about which Moeckel complains. The plaintiff strenuously argues that Caremark Inc. should be considered a fiduciary because it exercises authority and control over Plan assets and exercises discretionary authority over the administration and management of the Plan.

ERISA provides that "not only the persons named as fiduciaries by a benefit plan, see 29 U.S.C. § 1102(a), but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, see § 1002(21)(A), is an ERISA 'fiduciary.'" *Mertens*, 508 U.S. at 251. Specifically, "a person[11] is a fiduciary with respect to a plan to the

_____

[11]ERISA defines a "person" to include a corporation. *Hamilton v. Carrell*, 243 F.3d 992, 998 (6th Cir. 2001).

23

extent (i) he exercises any discretionary authority or discretionary control respecting

management of such plan or exercises any authority or control respecting management or

disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct

or indirect, with respect to any moneys or other property of such plan, or has any authority or

responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility

in the administration of such plan."  29 U.S.C. § 1002(21)(A)(i)–(iii).  Thus, ERISA defines

"fiduciary"  "not in terms of formal trusteeship, but in *functional* terms of control and authority

over the plan, thus expanding the universe of persons subject to fiduciary duties . . . ."  *Mertens*,

508 U.S. at 262 (emphasis in original and internal citation omitted); *see also Smith*, 170 F.3d at

613("[T]he definition of a fiduciary under ERISA is a functional one, is intended to be broader

than the common law definition, and does not turn on formal designations such as who is the

trustee.")  Courts "examine the conduct at issue to determine whether it constitutes

'management' or 'administration' of the plan, giving rise to fiduciary duties, or merely a

business decision that has an effect on an ERISA plan not subject to fiduciary standards."

*Seaway Food Town, Inc. v. Med. Mut. of Oh.*, 347 F.3d 610, 617 (6th Cir. 2003) (quoting *Hunter*

*v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000)).  Courts must also consider whether a

person was acting as a fiduciary when taking the actions alleged in the complaint, since not all

actions by persons who might be fiduciaries will be undertaken in relation to a plan.  *Seaway*,

347 F.3d at 617 (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).

     There can be no dispute that Caremark Inc. is not a "named fiduciary" under the Plan,

since the Service Contract specifically states:

> Client shall have sole authority to control and administer the Plan.  *Nothing in this*
> *Agreement shall be deemed to confer upon Caremark the status of fiduciary as defined in*

> *the Employee Retirement Income Security Act of 1974, as amended*, or any responsibility for the terms or validity of the Plan. Client has the sole right to resolve disputed claims and shall promptly inform Caremark of such resolution.

Service Contract ¶ 4.b (emphasis added). Nevertheless, whether Caremark Inc. constitutes a "functional fiduciary" is a crucial, and open, question. Because this determination turns on facts not before the court at this early stage in the litigation, the court declines to decide this issue at present, and the plaintiff will be permitted to adduce facts in an effort to establish this point.

The defendants argue that ERISA fiduciary status is a question of law for the court to decide. But this is not strictly correct. In *Hamilton v. Carrell*, the Sixth Circuit addressed the question of whether ERISA fiduciary status is strictly a factual issue, a legal issue, or a mixed question of law and fact, in order to determine the appropriate standard of review to apply to a district court's determination, after a bench trial, that a defendant was not acting as a fiduciary in a particular context. *Hamilton v. Carrell*, 243 F.3d 992, 997 (6th Cir. 2001). After noting that "[o]ther circuits that have addressed the question have held that fiduciary status under ERISA is a mixed question of law and fact," the court concluded that "*where the facts are not in question*, a party's status as an ERISA fiduciary is purely a question of law." *Hamilton*, 243 F.3d at 997 (citing *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut.*, 982 F.2d 1031, 1034 (6th Cir. 1993) and *Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir. 1989)). The Court noted that the findings of fact that the district court had made pursuant to the bench trial to underlie its legal conclusion about the defendant's fiduciary status were subject to a clearly erroneous standard of review, while the legal conclusion drawn from these facts was subject to *de novo* review. Observing that the "Sixth Circuit recently emphasized the need to examine the conduct at issue when determining whether an individual is an ERISA fiduciary," the court proceeded to analyze

25

the district court's factual findings, parsing the evidence to determine its sufficiency to support the district court's legal conclusion on fiduciary status, and ultimately affirming the district court's conclusion. *Id.* at 998.

In view of *Hamilton*, it is clear that it would be premature to determine Caremark Inc's fiduciary status at this juncture, without any facts about its conduct other than those contained in the Service Contract. The plaintiff has pled that Caremark is a "fiduciary" because "it exercises authority and control over Plan assets and when negotiating and/or collecting rebates, discounts, interest, fees, and other pricing mechanisms with or forms of compensation from entities dealing with the Plans." (Docket No. 44 ¶ 21.) The plaintiff has also pled that "Caremark is an ERISA fiduciary in its relationship to the Plans because Caremark exercises discretionary authority and control over the administration and management of the Plans."[12] *Id.* at ¶ 22. Because plaintiffs have alleged that Caremark, Inc. has wide discretion to administer and manage benefits under the

---

[12]The plaintiff pleads that this discretionary authority and control includes, but is not limited to, implementation of information-gathering systems and claims-processing systems; claims administration; establishment, management, and administrative control over the formularies used by the Plans; establishment, management, and administrative control of negotiations and contractual arrangements with a network or multiple networks of pharmacies to provide prescription drugs; negotiation with drug manufacturers to provide rebates to the Plans; deciding which drugs will be placed on a list of maximum allowable costs ("MAC"), setting MAC pricing, determining whether a drug is "brand" or "generic," and other related matters; deciding which average wholesale price ("AWP") reporting source to use for drug pricing; defining the scope and parameters of prescription drug benefits and which brands of prescription drugs will be made available and on what terms; deciding whether a Plan participant or beneficiary is entitled to receive a prescription drug benefit; deciding what co-payments and other payments are payable by a Plan participant or beneficiary; creating retail pricing spreads by determining the terms of contracts with the retail pharmacies; establishing mail-order; generating and retaining interest on the "float" prior to disbursement of rebates to the Plans; deciding through contractual negotiations how payments, credits, and other compensation will be characterized; and deciding which manufacturers' drugs to target and switch. (Docket No. 44 ¶ 22.)

26

Plan, the court finds that it has adequately pled Caremark Inc.'s status as a fiduciary to survive a motion to dismiss. *See Hill*, 409 F.3d at 717 (finding that, because plaintiffs alleged in their complaint that the defendant had discretion to grant or deny plaintiffs' claims, plaintiffs had adequately pled ERISA fiduciary status to survive a motion to dismiss); *see also Mulder v. PCS Health Sys., Inc.*, Civ. No. 98-1003 (WGB), at 16 (D.N.J. Aug. 31, 1999) (concluding, in a factually similar case, that "[h]owever skeptical the Court may be of the existence of evidentiary support for this allegation, it is sufficient to establish PCS's fiduciary status for the purpose of this motion to dismiss."). *But see Chicago Dist. Council of Carpenters Welfare Fund v. Caremark Rx, Inc*, No. 04 C 5868, at 8 (N.D. Ill. Apr. 14, 2005) (concluding, on a motion to dismiss in a factually similar case, that defendant pharmacy benefit managers were not ERISA fiduciaries); *Bickley*, 361 F. Supp. 2d at 1334 (same). Dismissal is improper with respect to this issue.

D.      Applicability of Federal Rule of Civil Procedure 23.1

The defendants urge dismissal on the basis that Moeckel has not complied with the requirements of Federal Rule of Civil Procedure 23.1, including making a demand for action upon the Plan Administrator of the John Morrell Plan and filing a verified complaint. Because the court finds Rule 23.1 inapplicable to the plaintiff's case, the court finds dismissal is not mandated on this ground.

Rule 23.1, concerning "Derivative Actions by Shareholders," provides as follows:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time

of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

Fed. R. Civ. P. 23.1. The Supreme Court in *Daily Income Fund, Inc. v. Fox* discussed the origin of the Rule as having been its 1882 decision in *Hawes v. City of Oakland*, 104 U.S. 450 (1882), in which the Court established prerequisites to bringing shareholder derivative suits in federal court in an effort to curb the potential for abuse that arose from such suits, which the courts had been commonly entertaining under their equity powers. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530, 542 (1984) (holding that Rule 23.1 does not apply to an action brought by a shareholder under § 36(b) of the Investment Company Act and that a plaintiff in such case need not make a demand before bringing suit). The prerequisites, which were ultimately carried forward into the Federal Rules, were designed to limit the use of the shareholder derivative suit and reflected the basic policy that "[w]hether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders." *Daily Income*, 464 U.S. at 532 (quoting *United Copper Secs. Co. v. Amalgamated Copper Co.*, 244 U.S.261, 263 (1917)). The Court stated that, "the conceptual basis and purposes of Rule 23.1 confirm what its language suggests: the Rule governs only suits 'to enforce a right of a corporation' when the corporation itself has 'failed to enforce a right which may properly asserted by it' in court." *Daily Income*, 464 U.S. at 533–34.

In *Kayes v. Pacific Lumber Company*, the Ninth Circuit Court of Appeals faced the

28

question presently before this court: whether plaintiffs claiming breach of fiduciary duties under ERISA in a putative class action were required to satisfy the requirements of Rule 23.1 before bringing suit. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1461–63 (9th Cir. 1995). Recognizing that, because the plaintiffs were bringing suit on behalf of the plan, the case "may be characterized as 'derivative' in the broad sense," the Court found that, under the plain language of Rule 23.1, which focuses on shareholders or members in a corporation or unincorporated association (not beneficiaries suing to enforce the rights of a plan), the Rule did not apply. *Id.* at 1462. The Court also considered the Supreme Court's decision in *Daily Income*, which stressed the narrow applicability of the Rule, and concluded that, "[n]either the text of Rule 23.1 nor the concerns that motivate its separate treatment for shareholder derivative actions apply here, for the plaintiffs are not 'shareholders' suing on behalf of a 'corporation.'" *Kayes*, 51 F.3d at 1463. *But see Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 134 F. Supp. 2d 1, 22 (D.D.C. 2000) (concluding that plaintiffs asserting ERISA breach of fiduciary duty claims must bring claims in a derivative action and must satisfy requirements of Rule 23.1, but failing to consider the plain language of the Rule which focuses on shareholders and corporations).

This court is persuaded by the reasoning of the *Kayes* court, as other courts considering factually similar claims have been. *See Mulder v. PCS Health Sys., Inc.*, Civ. No. 98-1003 (WGB), at 16 (D.N.J. Aug. 31, 1999) (noting that, as under *Kayes*, it is "unclear whether Rule 23.1 would even apply to this kind of ERISA action"); *see also Bickley*, 361 F. Supp. 2d at 1334 (finding that Rule 23.1's requirements should not be engrafted onto ERISA, which contains its own well-defined enforcement scheme). For these reasons, Rule 23.1 provides no bar to plaintiff's claims.

E.      Motion to Transfer Venue

In the alternative, the defendants assert that this case should be transferred to the Northern District of Alabama, pursuant to 28 U.S.C. 1404(a).  This statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (2005).  The defendant bears the burden of showing that the forum should be changed.  *Blane v. Amer. Inventors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996).  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The Sixth Circuit advises that, "in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

In ERISA cases, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found . . . ."  29 U.S.C. § 1132(e)(2).  The plaintiff asserts that venue is proper in this district because Caremark Rx Inc.'s headquarters are located in Nashville and further argues that defendants have offered no factual basis for venue to exist in Alabama.  Defendants point out that plaintiff's counsel previously filed an identical case which is currently pending in the Northern District of Alabama; thus, they claim that venue is proper there.  However, the plaintiff observes that none of Caremark Rx Inc.'s operations centers are in Alabama and that venue was proper in Alabama with respect to the

30

prior suit because Caremark Rx, Inc. used to be headquartered in Birmingham, Alabama (which appears no longer to be the case).

Defendants argue that this case should be transferred to the Northern District of Alabama because two "identical" lawsuits that involve "identical defendants, identical claims, and identical counsel" are pending in that district. Defendants further contend that the two putative classes that Moeckel seeks to certify are necessarily subsumed by the broader class that a plaintiff in one of the Alabama cases seeks to certify. The defendants also argue that this case has no ties to this jurisdiction, since Moeckel is a resident of South Dakota (where the John Morrell Plan is also based), and because "Caremark Inc.'s administrative services provided pursuant to the Service Contract are managed out of Northbrook, Illinois, which is Caremark Inc's principal place of business." (Docket No. 35 at 38 n.17.) The defendants assert that they should not be required to litigate identical issues in two separate and distant jurisdictions, given that the document, witness, and deposition discovery undoubtedly will be almost identical, and argue that judicial economy favors transfer. Finally, defendants argue that, without a transfer of venue, they face the possibility of having two different tribunals decide the rights of the same class members, which they assert would lead to conflicting results.

In this case, the balance does not weigh in favor of the defendant. Plaintiff's choice of forum is the Middle District of Tennessee, a factor given strong weight. *See S. Elec. Health, Fund v. Bedrock Servs.*, No. 3:02-0309, 2003 U.S. Dist. LEXIS 24396, at *15 (M.D. Tenn. July 24, 2003). Defendants do not contest personal jurisdiction. They do not assert that the Alabama venue would be more convenient for witnesses, merely that it would be more convenient for counsel, with similar discovery. Defendants' strongest tie to Alabama is the two similar cases

Case 3:04-cv-00633   Document 69   Filed 08/29/05   Page 31 of 32 PageID #: 41

currently pending there; it asserts no other connections to Alabama, such as location of witnesses or location of its offices (which appear to have moved).

Defendants' strongest argument is the interest in avoiding potential conflicts inherent in having two different tribunals decide the rights of the same class members. However, this argument is premature. It is unclear which of the cases is on the faster track. Also, this argument assumes that classes will be certified in all pending cases. In fact, *Bickley*, one of the two Northern District of Alabama cases to which the defendants refer, was dismissed on December 30, 2004, and a motion to alter or amend judgment has been denied. *Bickley v. Caremark Rx, Inc.*, No. CV-02-VEH-2197-S, 2005 U.S. Dist. LEXIS 8789 (Feb. 10, 2005). At some point, consolidation of the cases might be appropriate, such as if a class were certified that subsumes the other potential classes. However, it was the *Bickley* class that the defendants argued might subsume Moeckel's asserted classes, so that potentiality is somewhat lessened.

In view of the strong interest favoring a plaintiff's choice of forum, the defendants have failed to meet their burden to convince this court that a transfer of venue would serve the convenience of parties and witnesses and the interests of justice. Therefore, no transfer will be ordered at this time.

## Conclusion

For the reasons expressed herein, defendants' Motion (Docket No. 45) will be granted in part and denied in part.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

32