**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ROBERT E. MOECKEL, individually and on behalf of the John Morrell Employee Benefits Plan, similarly situated Plans, and other participants and beneficiaries similarly situated,** | ) ) ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) ) | **Case No. 3:04-0633** **Judge Trauger** |
| **CAREMARK, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

Pending before the court is a motion to dismiss or transfer venue to the Northern District of

Illinois, pursuant to 28 U.S.C. § 1406(a), or, in the alternative, to transfer venue to the Northern

District of Illinois pursuant to 28 U.S.C. § 1404(a) by defendant Caremark, Inc. ("Caremark").

(Docket No. 82). Plaintiff has responded in opposition to the motion (Docket No. 87), and Caremark

has replied (Docket No. 88).

**Factual Background and Procedural History**

The court has recently summarized the procedural and factual history of this case in the

Memorandum accompanying its August 29, 2005 Order (Docket Nos. 69, 70), which is adopted

herein by reference. Additional relevant background follows**.**

On August 29, 2005, the court granted in part and denied in part defendants Caremark Rx,

Inc. and Caremark's amended and restated motion to dismiss or transfer plaintiff's complaint.

1

(Docket Nos. 69, 70). The court granted the motion to the extent that defendant Caremark Rx, Inc. was dismissed as a party to this action. (Id.) The court denied the motion in all other respects, including Caremark's request to transfer this action to the Northern District of Alabama pursuant to 28 U.S.C. § 1404(a). (Id.)

Caremark had contended that this case should be transferred to the Northern District of Alabama because two "identical" lawsuits involving "identical defendants, identical claims, and identical counsel" were pending in that district, because the two putative classes plaintiff seeks to certify were necessarily subsumed by the broader class that a plaintiff in one of the Alabama cases sought to certify, and because this case had no ties to this jurisdiction since plaintiff is a resident of South Dakota and Caremark's administrative services provided pursuant to the service contract are managed out of Northbrook, Illinois, which is Caremark's principal place of business. (Docket No. 69 at 30-32). The court rejected Caremark's arguments and found that Caremark had failed to meet its burden of convincing the court that a transfer of venue to the Northern District of Alabama would serve the convenience of the parties and witnesses and the interests of justice. (Id.) After the court's decision, Caremark filed a motion to certify interlocutory appeal, to amend order, and to stay the case pending appeal. (Docket No. 71). The court denied the motion in all respects. (Docket No. 74).

## Motion to Transfer Venue

Caremark now contends that venue is not proper in this district and this case should be dismissed or transferred pursuant to 28 U.S.C. § 1406(a) because Tennessee has no connection to the plaintiff, to the only remaining defendant, or to the issues raised in the complaint. (Docket No. 82 at 1). In the alternative, Caremark contends that this case should be transferred to the Northern

2

District of Illinois pursuant to 28 U.S.C. § 1404(a) because this case has no meaningful connection to this district, and this case would be more conveniently litigated and tried in the Northern District of Illinois, which is the location of the events giving rise to this dispute, and is the location of nearly all of the witnesses and sources of proof. (Id.)

In response, plaintiff asserts that (1) Caremark should not be rewarded for filing successive motions to transfer venue merely to move the cases to a jurisdiction in which Caremark perceives a greater likelihood of success; (2) venue was proper when this case was commenced and remains proper today notwithstanding the involuntary dismissal of a resident defendant; (3) venue is proper because Caremark's principal place of business and all of its officers and directors are within this judicial district; and (4) Caremark has not demonstrated that the interests of justice would be best served by transferring this case to the Northern District of Illinois. (Docket No. 87 at 1). Alternatively, plaintiff asserts that he should be allowed to conduct discovery to obtain and present facts in opposition to defendant's motion before the court rules upon the motion. (Id.)

## A.     Improper venue under 28 U.S.C. § 1406(a)

According to Caremark, venue is improper in this judicial district, and this case should be dismissed or transferred pursuant to 28 U.S.C. § 1406(a) because Tennessee has no connection to the plaintiff, to Caremark, or to plaintiff's allegations of wrongdoing. (Docket No. 82 at 1). Under § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." In ERISA cases, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found . . . ." 29 U.S.C. § 1132(e)(2). Venue is to be determined as of the time the complaint was

3

filed, and is not affected by a subsequent change of parties. See Paragon Fin. Group, Inc. v. Bradley Factor, Inc., No. 1:02-CV-222, 2003 WL 23471548, **10-11 (E.D. Tenn. Dec. 4, 2003); NCR Corp. v. Gartner Group, Inc., No. C-3-96-121, 1997 WL 1774881, *5 (S.D. Ohio Sept. 15, 1997).

Caremark agrees that venue is to be determined at the time of the filing of the complaint, but argues that the only connection to this district was former defendant Caremark Rx, Inc., an entity plaintiff sued only to "manufacture venue" in this district. (Docket No. 88 at 2-3). According to Caremark, plaintiff's attorneys knew at the time they filed the complaint that Caremark Rx., Inc. was not a proper defendant in this action because "the same group of plaintiffs' lawyers" had voluntarily dismissed the same entity from an identical action, "based on its non-involvement," nearly two years before. (Id. at 2). Thus, Caremark urges, plaintiff should not be allowed to use frivolous claims as a basis for establishing venue in the Middle District of Tennessee in this case. (Id. at 3).

Plaintiff denies Caremark's accusations of manufacturing venue, and the only evidence Caremark submits in support of its bold accusations is a Notice of Voluntary Dismissal filed on December 5, 2002, in another case against Caremark and Caremark Rx, Inc. brought by different plaintiffs, who were represented by the same attorneys now representing plaintiff in this case. (Id. n.1). However, the Notice does not specify any reason for the voluntary dismissal of Caremark Rx, Inc. (Exh. 1 to Docket No. 88). Contrary to Caremark's representation, then, the Notice contained no concession by the plaintiffs' attorneys that Caremark Rx, Inc. lacked involvement in the alleged breach. (Id.)

Caremark asserts that "Plaintiff can point to no justification for his attempt to join Caremark Rx as a defendant in this matter. It was not a party to the contract at issue, and Plaintiff alleged no

4

corporate veil-piercing theory in his Complaint." (Docket No. 88 at 3). While it is true that plaintiff has not alleged a veil-piercing theory, plaintiff has maintained a breach of fiduciary duty claim against Caremark Rx, Inc. since the inception of this litigation and has briefed the theory on multiple occasions. Although the court dismissed Caremark Rx, Inc. from this action,[1] the court cannot find, on the evidence before it, that plaintiff brought suit against Caremark Rx, Inc. solely for the purpose of establishing or "manufacturing" venue in this judicial district.

Because venue is to be determined as of the time the complaint was filed and is not affected by a subsequent change of parties, and because Caremark Rx, Inc. was and is a resident of Tennessee,[2] the court finds that venue was proper when this action was commenced, and remains proper today.

Plaintiff also asserts that venue is proper in this district because Caremark's principal place of business is Nashville. The Sixth Circuit's "total activity test," which is used to determine a company's principal place of business for diversity jurisdiction purposes, is instructive. Gafford v. Gen. Electric Co., 997 F.2d 150 (6th Cir. 1993). This test combines the "nerve center test," with its emphasis on the "situs of corporation decision making authority," with the "corporate activity/place of activity test" and its emphasis on "the location of production activities or service activities." Id. at 162. In support of his contention that Nashville is Caremark's principal place of business, plaintiff submits Internet print-outs[3] purportedly of Caremark's annual reports from 2003, 2004,

---

[1]The court dismissed Caremark Rx, Inc. after having found that it was not a party to the service contract at issue in this case. (Docket Nos. 69, 70).

[2]Caremark does not dispute that Caremark Rx, Inc. was and is a resident of Tennessee. (Docket No. 83 at 3).

[3]The court would have preferred that plaintiff submitted official state government records for the court's review. However, the court was able to view first-hand the very same documents

and/or 2005 from several state government websites. (Docket No. 87 at 7-9, n.13-22). In April 2004, Caremark purportedly reported to the Missouri Secretary of State that its corporate headquarters was at 211 Commerce Street, 8th Floor, Nashville Tennessee. In June 2004, Caremark purportedly reported to the Kentucky Secretary of State that its principal office address should be changed to 211 Commerce Street, 8th Floor, Nashville, Tennessee. In July 2004, Caremark purportedly reported to the Iowa Secretary of State that its principal office was at 211 Commerce Street, 8th Floor, Nashville, Tennessee. In August 2005, Caremark purportedly reported to the Colorado Secretary of State that its principal office was at 211 Commerce Street, 8th Floor, Nashville, Tennessee. However, other evidence submitted by plaintiff shows that Caremark purportedly reported to the New Hampshire, Missouri, and Mississippi Secretaries of State during 2003, 2004, and 2005 that its principal office, principal place of business, and/or corporate headquarters was at 3000 Galleria Tower, Suite 1000, Birmingham, Alabama. All but one of these reports was signed by Sara Finley, Caremark's vice president, secretary, and director. (Id.)

Caremark maintains that its principal place of business is located in Northbrook, Illinois (which sits in the Northern District of Illinois) and points out that an Illinois district court so found in August of 2005. (Docket No. 88 at 4)(citing Chicago District Council of Carpenters Welfare Fund v. Caremark Rx, Inc., No. 04 C 5868, 2005 WL 1950568, at *2 (N.D. Ill. August 10, 2005)). However, all of the evidence considered by the Illinois court is not before this court, and the Illinois court applied the "nerve center" test as is required by the Seventh Circuit Court of Appeals, id., not the Sixth Circuit's "total activity" test.

In addition to the locale of Caremark's headquarters, plaintiff asserts that Caremark's

submitted by plaintiff on public websites for each of the state governments listed herein.

6

directors and officers are also located in Nashville, providing further support for plaintiff's position that venue is proper in this judicial district. Specifically, plaintiff claims that two officers, one chief executive officer, and one vice-president/secretary of Caremark are located in Nashville now. Plaintiff points the court to an October 4, 2005, annual report submitted by Caremark to the Michigan Department of Labor and Economic Growth listing its current officers and directors along with each person's business address. In the report, all eight directors and officers were listed with Nashville addresses.[4] Defendant contends that the October 4, 2005 report was erroneous and submits affidavit testimony stating that an amended report was filed later in 2005. (Exh. 2 to Docket No. 88 at 3). The amended report lists two directors in Nashville and two in Northbrook, as well as two officers in Nashville and three officers in Northbrook. (Id.) Caremark contends that its day-to-day corporate decisions are made in Northbrook and that that is the location of the company's central business operations. (Docket No. 88 at 3).

Using the "total activity test" set forth by the Sixth Circuit, the court is unable to determine with certainty where Caremark's principal place of business is or, more importantly, was at the relevant time. The dispositive facts are hotly disputed by the parties, and because the court has already determined that venue in this judicial district is proper on an independent basis, the court need not determine, at this time, where Caremark's principal place of business is to resolve Caremark's pending motion.

As a third basis on which to find venue proper in this judicial district, plaintiff contends that Caremark's alleged breach of fiduciary duty occurred in Nashville. Plaintiff claims that it is "likely" that defendant's alleged wrongful conduct "springs from high up its corporate ladder,"

---

[4]It is unclear from the record whether these people were located in Nashville at the time of the alleged breaches.

7

because the essential decisions and other acts that are at the core of Caremark's business model are decisions made by officers and directors of the company, and not by benefit administrators or account executives and managers. (Docket No. 87 at 9). In support of his theory, plaintiff submits a letter in which defendant states that its contracts with drug manufacturers and retail pharmacies are negotiated for the entirety of Caremark's operations, instead of for a particular client. (Ltr. from defense counsel dated 11/4/05, Exh. 10 to Docket No. 87). Caremark maintains that any breach would have occurred in the Northern District of Illinois where Caremark actually interacted with the John Morrell Plan in performing its duties and responsibilities under the agreement, and from where Caremark administered its contract with John Morrell on a daily basis. Again, the disputed facts prevent the court from being able to determine at this stage of the proceedings whether the alleged breach or breaches of fiduciary duty occurred in Nashville or Northbrook or both. Nevertheless, under these facts, Caremark has not persuaded the court that venue in this judicial district is improper. Caremark's motion to dismiss or to transfer under § 1406(a) therefore will be denied.

## B. Transfer of venue under 28 U.S.C. § 1404(a)

In the alternative, defendant contends that this case should be transferred to the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a). This statute provides: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2005). The defendant bears the burden of showing that the forum should be changed. Blane v. Am. Inventors Corp., 934 F. Supp. 903, 907 (M.D. Tenn. 1996). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id. (quoting Gulf Oil Corp.

v. Gilbert, 330 U.S. 501, 508 (1947)).  The Sixth Circuit advises that, "in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991).

Plaintiff apparently does not dispute that venue would be proper in the Northern District of Illinois, and that the case could have been brought in that district.[5]  Plaintiff reminds the court, however, that Caremark previously attempted to transfer this case to the Northern District of Alabama and intimates that Caremark's motive in so doing was to obtain a favorable ruling based on that court's previous disposition in a similar case.  (Docket No. 87 at 5).  Plaintiff points out that Caremark continued to seek the transfer of this case to the Northern District of Alabama even after the denial of Caremark's motion to dismiss, after the denial of Caremark's motion to transfer to the Northern District of Alabama, after the denial of Caremark's motion to certify this case for interlocutory appeal, and after the denial of Caremark's motion to stay this litigation pending an appeal of a separate case in the Eleventh Circuit in late September 2005.  (Id. at 4-5).  Plaintiff asserts that Caremark only now wants this case transferred to the Northern District of Illinois--700 miles from where Caremark first insisted was the most convenient forum for this case--because Caremark's attempts to move the case to Alabama failed, and Caremark has received a favorable ruling in another case in the Northern District of Illinois.  Caremark, of course, disputes plaintiff's

_____

[5]At no point in plaintiff's 17 page memorandum filed in response to defendant's motion to transfer venue does plaintiff assert that this case could not have been brought in the Northern District of Illinois.  (Docket No. 87).  Rather, plaintiff asserts that defendant has not demonstrated that the interests of justice would be best served by transferring this case to the Northern District of Illinois.  (Id. at  12-17).

9

assertions, and claims that the Northern District of Illinois is not only the more convenient forum, but the only proper forum for this action now that Caremark Rx, Inc. has been dismissed from this action.

Plaintiff elected to bring this action in the Middle District of Tennessee. Caremark maintains that plaintiff's choice of forum, while ordinarily afforded great weight, should be afforded little to no weight in this instance because plaintiff seeks to certify a class action, and plaintiff does not reside in this state. (Docket No. 88 at 7). Caremark cites only non-binding authority from other jurisdictions to support this proposition, and the court is not persuaded by it.

The declaration of Mr. James K. Hogan, a Caremark strategic account executive, submitted on behalf of Caremark, states that all of the relevant witnesses--both party and non-party--are located in or around Northbrook, Illinois, including: (1) the individuals involved in, and with knowledge of, the negotiation of Caremark's contracts with the John Morrell Plan; (2) the individuals involved in, and with knowledge regarding, the administration of the contracts between Caremark and the John Morrell Plan; and (3) the individuals who have responsibility for, and knowledge regarding, Caremark's arrangements with pharmaceutical manufacturers and retail pharmacies. (Hogan Decl., Exh. A to Docket No. 83). Mr. Hogan's declaration is conclusory in many respects. He does not provide any specific details of who negotiated the pharmaceutical contracts at issue and where those contracts were negotiated. (Id. ¶ 21). These omissions are suspect, considering that Caremark is aware that plaintiff alleges Caremark breached its fiduciary duty by creating and retaining undisclosed "spreads" between the price the plan pays for drugs and the price that Caremark pays for those drugs, by "switching" members' prescriptions from drugs prescribed by members' physicians to drugs for which Caremark has favorable contractual

agreements, and by retaining interest on the "float" between the time Caremark collects a rebate and the time the rebate is eventually passed on to the plan. (Docket No. 87 at 9). Although Mr. Hogan filed a supplemental declaration purporting to provide more specificity with regard to these matters, (Hogan Decl., Exh. 3 to Docket No. 88), his testimony still leaves open the possibility that the relevant pharmaceutical contracts were negotiated in Tennessee. Presumably, Caremark could have easily established through Mr. Hogan or an officer or director that none of the alleged breaches occurred in Tennessee if that were true, thereby putting plaintiff's theory to rest, but Caremark has not done so.

Moreover, Caremark does not explain how it or any of the party and non-party witnesses identified by name in Mr. Hogan's declarations would be prejudiced by the continued litigation of this case in the Middle District of Tennessee. Mr. Hogan does not state that any of those individuals or himself would be inconvenienced in any manner. It is undisputed that Caremark's chief executive officer and vice president/secretary presently are located in the Middle District of Tennessee (Docket No. 88 at 3 n.2) "less than ten blocks from the Federal Courthouse in Nashville" (Docket No. 87 at 10), and under plaintiff's theory, some or all of them will likely be called to testify. (Docket No. 87 at 10).

Mr. Hogan also states that the documents relevant to this action are all located in the Northern District of Illinois. (Hogan Decl. ¶¶ 22-23, 28). While plaintiff apparently does not dispute that this factor favors transfer, (Docket No. 87 at 12-14), plaintiff asserts that his counsel is prepared to assume any burdens related to obtaining evidence outside of this judicial district. (Id. at 14). Plaintiff's counsel states that it "is comfortable conducting whatever discovery is necessary in the Chicago, Illinois area without the need to transfer the case." (Id.)

11

Caremark has not shown that the location of witnesses and evidence outside the Middle District of Tennessee will result in witnesses not testifying and attending or severe inconvenience. "It is not enough to simply state that witnesses and evidence are elsewhere without showing hardship or prejudice to either the witnesses or the moving party." Nemmers v. Truesdale, 612 F. Supp. 245, 247 (N.D. Ohio 1985). The court finds that Caremark has failed to demonstrate that the balance of convenience lies strongly in its favor. The court is therefore unwilling to upset plaintiff's choice of forum. Accordingly, defendant's motion to transfer under § 1404(a) (Docket No. 82) will be denied.

### Conclusion

For the foregoing reasons, defendant Caremark's motion to dismiss or transfer venue to the Northern District of Illinois, pursuant to 28 U.S.C. § 1406(a), or, in the alternative, to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) (Docket No. 82) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

12